position. The circumstances were also that the vehicles that defendants were driving were behind the vehicle that the plaintiff occupied and using the same road way, and while doing so, they drove their vehicles at a high rate of speed causing the collision. In addition, defendants drove their vehicles in excess of the posted speed limits there in effect at the time and place of the accident and/or for the circumstances. They breached the duty that each owed to the plaintiff not to do so. Defendants doing so was a substantial cause of the accident.

12. Defendant Bandukra, and/or in the alternative defendant Gallagher, also owed a duty to other people using the same road way, such as the plaintiff, to use ordinary care to avoid colliding with other people's vehicles, such as the vehicle occupied by the plaintiff, and to protect other people, such as the plaintiff, by following the traffic laws that were then in effect. Defendant Bandukra, and/or in the alternative defendant Gallagher, breached these duties that they owed to the plaintiff by not using ordinary care and/or by violating traffic laws that were in effect. Defendant Bandukra, and/or in the alternative defendant Gallagher, not using ordinary care and/or violating traffic laws was a substantial cause of the accident.

13. Defendant Bandukra, and/or in the alternative defendant Gallagher, owed a duty to the occupants of other motor vehicle, like the plaintiff, who were also using the same road way, to keep their vehicles adequately and sufficiently maintained. Defendant Bandukra, and/or in the alternative defendant Gallagher, breached this duty by not keeping their vehicles adequately/sufficiently maintained and not doing so was a substantial cause of the accident.

14. The aforesaid negligence was a proximate cause of the collision resulting in the injuries and damages sustained by the plaintiff. The plaintiff sustained extensive, serious, and permanent physical, mental, emotional injuries and economic damages having, and which will continue to have, a substantial and extreme painful, adverse and debilitating effect on plaintiff's physical, mental, emotional and economic well-being. The plaintiff has suffered

5

continuous, intense and permanent physical, mental and emotional debilitating pain, suffering, distress, agony, despair, anxiety, embarrassment, and depression which he will suffer into the foreseeable future. The plaintiff has sustained permanent scaring. The plaintiff has sustained past medical expenses and costs and will incur future medical expenses and costs. Plaintiff has sustained a loss of earnings and/or earnings capacity and will sustain a loss of earnings and/or earnings capacity in the future. The plaintiff has sustained life time care expenses and will likely sustain life time care expenses in the future. The plaintiff has sustained economic hardships and will likely sustain economic hardships into the future. The plaintiff has suffered and will likely continue to suffer from a loss of sleep. The plaintiff has been severely inconvenienced and plaintiff will be continuously and severely inconvenienced in the future. In addition thereto and/or in the alternative, as a result of the collision, plaintiff sustained and aggravation and/or worsening of a pre-existing conditions and/or plaintiff was susceptible to sustaining certain physical injuries. The plaintiff has sustained past, and will continue to sustain into the future, an impairment of his ability to enjoy his life. The above injuries and damages that the plaintiff has sustained, are sustaining, and in the future will sustain, had, have, and will have a substantial adverse effect on his overall health and well being.

15. At the time and place of the accident, defendant Sabiha Bandukra (agent) was driving her car on behalf of defendant Usman Bandukra (principal), or for both her and her husband's benefit. Defendant Usman Bandukra is also liable as defendant Sabiha Bandukra was acting as an agent for defendant Usman Bandukra. At the time and place of the accident, defendant Sabiha Bandukra was acting as defendant Usman Bandukra's general agent to transact all the business of defendant Usman Bandukra while in the District of Columbia, or all of the business of defendant Usman Bandukra of a particular kind, or in a particular place, or to do all acts connected with a particular trade, business or employment while she was in

6

the District of Columbia. Alternatively, during the time of the accident, defendant Sabiha Bandukra, on behalf of her husband, was involved in a single transaction, or series of transactions, not involving continuity of service for defendant Usman Bandukra.

WHEREFORE, plaintiff Robert Cornwell (on behalf of himself and the Estate of Michael Cornwell) hereby demands a judgment against defendant Sabiha Bandukra, Usman Bandukra, and/or defendant Matthew J. Gallagher, individually, severally, and/or jointly, in excess of Five Hundred Thousand Dollars ($500,000.00), post judgment interest, costs of this action, and such further relief that the court deems appropriate under these circumstances.

Respectfully submitted,
CHRISTOPHER M. JOHNS LLC
Christopher M. Johns, Esq. (MD15677)
Box 975, Laurel, MD 20725
Telephone: 301-674-6900
Facsimile: 301-540-5901

JURY DEMAND
The Estate of Michael Cornwell, through counsel, hereby demands trial by jury.

_____
Christopher M. Johns, Esq.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

ROBERT CORNWELL                   :
    Plaintiff,                         :
                        :
                        :
v.                                :    Case No.: 1:05-cv-02258-HHK
                        :
USMAN BANDUKRA,  et al.            :
    Defendants                      :

### O R D E R

Having considered plaintiff's motion for substitution of parties and/or for leave to

amend, and any opposition thereto, it this _____ day of _____ ,

_____, by the United District Court for the District of Columbia:

ORDERED: plaintiff's motion for substitution of parties and/or for leave to

amend is granted.


_____
            Judge John M. Facciola


\Copies to:

    Christopher M. Johns
    Box 975, Laurel, MD 20707
    Attorney for the Plaintiff

    Jennifer S. Jackman, Esq.
    WHITEFORD, TAYLOR &PRESTON, LLP
    1025 Connecticut Avenue, NW, Suite 400
    Washington, D.C. 20036
    Attorney for Defendants Bandukras

    Richard S. Schrager, Esq.
    Mallon A. Snyder Chartered
    107 North Adams Street
    Rockville, MD 20850
    Attorney for Defendant Gallagher

# Exhibit B

1                                                              Page 1
                IN THE UNITED STATES DISTRICT COURT FOR
2
                    THE DISTRICT OF COLUMBIA
3

4    MICHAEL A. CORNWELL,      )

5                 Plaintiff, )

6        v.                    )
                              ) CASE NO. 1:05-cv-02258-HHK
7    USMAN BANDUKRA, et al,  )

8                 Defendants.)

9

10                    CERTIFIED COPY

11

12
                DEPOSITION UPON ORAL EXAMINATION
13
                      OF ROY LATIERI
14
            TAKEN ON BEHALF OF THE DEFENDANTS
15
                   Sedley, Virginia
16
                  December 6, 2006
17

18

19

20

21

22
                  TAYLOE ASSOCIATES, INC.
23
            Registered Professional Reporters
24
                Telephone:   (757) 461-1984
25
                   Norfolk, Virginia

Page 6

1  think that's all I have for now. So why don't we get
2  started. Do you have any questions before we get
3  started?
4       A.   No.
5            MR. SCHRAGER: May I interrupt for a
6  moment?
7            MRS. JACKMAN: Yes.
8            MR. SCHRAGER: This is Richard Schrager.
9  I greatly appreciate everybody's consideration. If
10  you could all just speak a little bit loudly and
11  clearly, I will greatly appreciate it. Thank you very
12  much.
13  BY MRS. JACKMAN:
14       Q.   All right. Could you state your full
15  name, please.
16       A.   Roy Benjamin Latieri, Jr.
17            MRS. JACKMAN: Can you hear him okay?
18            MR. SCHRAGER: A little bit louder,
19  please. Put the phone right under the witness.
20            THE WITNESS: We are moving furniture.
21            Roy Benjamin, Latieri, Jr.
22            MR. SCHRAGER: Excellent. Thank you.
23  BY MRS. JACKMAN:
24       Q.   And what's your address?
25       A.   29394 Unity Road, Sedley, Virginia.

Page 8

1  were you traveling from?
2       A.   Franklin, Virginia.
3       Q.   Who was driving the car to DC from
4  Franklin, Virginia?
5       A.   Michael started. I finished.
6       Q.   Okay. At what point did you-all switch?
7       A.   Around College Park, Maryland.
8       Q.   Okay. And what if anything happened on
9  your way to the convention once you reached DC?
10       A.   We were stopped at a red light. We were
11  the first car at the red light because the light
12  changed, so that put us there first. And right before
13  the light changed again we were hit in the back.
14       Q.   Okay. Where were you sitting at the
15  time?
16       A.   I was the driver.
17       Q.   Where was Mr. Cornwell sitting?
18       A.   In the rear seat.
19       Q.   And where was Janet sitting?
20       A.   Passenger front.
21       Q.   Okay. How would you describe the hit or
22  the impact between you and the car behind you?
23       A.   Barely noticeable.
24            (There was an interruption in the
25  proceedings.)

Page 7

1       Q.   Did you know Michael Cornwell?
2       A.   Yes.
3       Q.   And how did you know him?
4       A.   We meet through church.
5       Q.   Okay. When did you meet him
6  approximately?
7       A.   A few weeks before this happened.
8       Q.   Okay. Prior to this incident had you
9  ever traveled in a car with Mr. Cornwell before?
10       A.   No.
11       Q.   And on August 30th, 2002, where were you
12  headed?
13       A.   Washington, DC.
14       Q.   And why were you going to Washington, DC?
15       A.   We were going to a Benny Hinn concert.
16       Q.   Okay. Who was traveling with you?
17       A.   Myself, Michael and Janet. I don't know
18  her last name.
19       Q.   Was there anybody else with you?
20       A.   No.
21       Q.   Whose car were you traveling in?
22       A.   Michael's brother's car.
23       Q.   Do you know Michael's brother's name?
24       A.   Bobby.
25       Q.   You said you were headed to DC. Where

Page 9

1  BY MRS. JACKMAN:
2       Q.   Okay. I'm sorry. You said it was barely
3  noticeable?
4       A.   Yes.
5       Q.   Okay. And what happened after the
6  impact?
7       A.   Looked around and asked if everybody was
8  okay. Everybody agreed they were okay.
9       Q.   Okay. And what happened after that?
10       A.   I believe it was Michael who started
11  talking it was payday, that we weren't okay, everybody
12  put your seat belts on, don't get out of the car.
13       Q.   What did you say to that?
14       A.   I was hesitant, and I said, you know,
15  okay.
16       Q.   And were you injured?
17       A.   No.
18       Q.   And based upon your observations was Mr.
19  Cornwell injured?
20       A.   No.
21       Q.   Okay. Did you observe the car that —
22            MR. JOHNS: Objection to the last
23  question, but go ahead. I'm going to object for the
24  record, and you can answer the questions after I
25  object. It's just for the record.

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-------------------------------x
                               :
MICHAEL A. CORNWELL,           :
                               :
              Plaintiff,       :
                               :
       v.                      :  Case No. 1-05-CV-00258-HHK
                               :
USMAN BANDUKRA, et al.,        :
                               :
              Defendants.      :
                               :
-------------------------------x
```

Friday, November 17, 2006

Rockville, Maryland

Deposition of

MATTHEW GALLAGHER,

witness, called for examination by counsel for the plaintiff,

pursuant to notice, at the office of Mallon A. Snyder,

Chartered, 107 North Adams Street, Rockville, Maryland 20850,

beginning at 10:44 a.m., before Sharon Mitrothanasis, a notary

public of the State of Maryland, when were present on behalf

of the respective parties:

DEPOSITION SERVICES, INC.
(301) 881-3344

Page 6

1  you know what the question was again. I'll repeat the
2  question for you.
3      A   Okay.
4      Q   That way later if this has to be used in court or
5  something then everybody is going to assume you heard it, just
6  to be fair. Also, yes or no answers. Just say yes or no
7  instead of uh-huh. Like we do in every day language we, you
8  know, use facial gestures or uh-huh or something like that,
9  just answer yes or no if you mean yes or no.
10     A   Okay.
11     Q   You don't look like a man that's on a lot of
12  medication or anything. I mean, is there anything that would
13  keep you from giving your best testimony today?
14     A   No.
15     Q   You know why we're here, the accident in question?
16     A   Yes.
17     Q   Now, it's true in this accident, isn't it, that
18  you're the middle car in the accident?
19     A   Yes.
20     Q   And, it's true that the car behind you hit you hard
21  enough to cause you to hit the car in front of you, is that
22  true?
23          MS. JACKMAN: Objection.
24          MR. SCHRAGER: Objection to the form of the
25  question. You can answer it if you can.

Page 7

1          THE WITNESS: It's true that the car behind me did
2  strike me.
3          BY MR. JOHNS:
4      Q   And, what happened after the car behind you struck
5  your vehicle?
6      A   Are you looking for a timeline or actions I did? I
7  don't understand the question.
8      Q   What actions did you take when the car hit you from
9  behind?
10     A   I asked if my mother was okay.
11     Q   Prior to getting to that -- let's take a timeline
12  approach. Let's do that. Where were you at the time this
13  accident happened?
14     A   On New York Avenue, Washington.
15     Q   What color was the light?
16     A   I had stopped. It was red.
17     Q   How many cars were in front of you?
18          MR. SCHRAGER: In the lane directly ahead of him?
19          BY MR. JOHNS:
20     Q   Yes, directly ahead.
21     A   I know there was the car that was right ahead of me.
22  I don't know the other cars -- I don't know how many other
23  cars.
24     Q   Was the car ahead of you the first in line at the
25  intersection?

Page 8

1      A   When the light turned red, yes.
2      Q   How long were you stopped there before the accident
3  happened?
4      A   Maybe 20-30 seconds.
5      Q   Which way were you looking, let's say after you
6  stopped the car but before the accident, what were you looking
7  at? Were you looking in the car or were you looking straight
8  out your window or both, how did that happen?
9      A   I would have stopped and I know that I saw the car
10  in my rearview mirror coming towards me.
11     Q   So, was that right before the accident or were you
12  looking in your rearview mirror all the time from the point
13  that you stopped until the point of the accident, that you
14  recall?
15     A   When I am in traffic I watch my mirrors and I watch
16  ahead of me.
17     Q   Did you watch ahead on this occasion, this accident?
18  Did you see ahead of you?
19     A   Yes.
20     Q   What did you see when you looked straight ahead
21  before the accident?
22     A   There was a car ahead of me and there was a traffic
23  light.
24     Q   What, if any, people did you see in the car ahead of
25  you?

Page 9

1          MR. SCHRAGER: Before the accident?
2          BY MR. JOHNS:
3      Q   Before the accident.
4      A   Before the accident I was not paying that much
5  attention to that people inside the car.
6      Q   At anytime did you see the people inside the car
7  ahead of you, either before, during or after the accident?
8  I'm talking about in close proximity, you know, from the point
9  that you stopped your car to the point of the accident and
10  then right after the accident. Is there any point that you
11  did see the people in the car in front of you?
12     A   After the accident I did look at the car in front of
13  me to see if they were okay, if there was a fire. I looked in
14  the mirror to the people behind me also.
15     Q   You were concerned that there was a fire, there
16  could have been a fire or something? What led you to be
17  concerned about that?
18     A   I'm trained as a disaster responder for the American
19  Red Cross. We are told to check the scene, every scene no
20  matter what it is. And, we always check those types of
21  things.
22     Q   Do you recall seeing a passenger in the backseat,
23  let's say before the accident, right before the accident? Or,
24  let's say after the point that you stopped at that
25  intersection and prior to the accident did you see any rear

3 (Pages 6 to 9)

Page 10

1  seat passengers in the car in front of you, if you think back?
2  You can take time to think about that if you want.
3      A   Once the car came to -- once after the accident, I
4  did notice that there were three people in the car ahead of
5  me.
6      Q   And, that was after the accident?
7      A   Yes.
8      Q   Was it possible you saw while the accident
9  happening?
10     MR. SCHRAGER: Objection to the form of the
11  question. Don't ask him what's possible.
12     MR. JOHNS: Alright, I'll strike the question.
13     BY MR. JOHNS:
14     Q   You testified that you were looking in your rearview
15  mirror some of the time. When you got hit is that where your
16  eyes were, in the rearview mirror or was it straight ahead?
17     A   I don't recall.
18     Q   Did you anticipate getting hit by the car behind
19  you?
20     A   I saw the coming and it did not look like it was
21  stopping, so I -- to the best of my recollection I might have.
22     Q   So, you anticipated getting hit probably you think?
23     A   From what I recall, yes.
24     Q   When you say you observed the car behind you not
25  stopping, is that because it wasn't slowing down?

Page 11

1      A   I could not tell if it was slowing down or not. I
2  just saw that it was still moving.
3      Q   Did you hazard an estimate of what they might have
4  been doing as far as speed behind you?
5      MS. JACKMAN: Objection; calls for speculation.
6      BY MR. JOHNS:
7      Q   I'm not asking you to guess. I'm just asking to use
8  your powers of observation, if you can make an estimate as
9  opposed to guessing.
10     A   I'm not a good judge of that. I don't know.
11     Q   Were you very concerned at the time that you saw
12  this happening behind you? I mean, did it get your blood
13  pressure up? I mean, were you worried or did you think it
14  wasn't a big deal? How did you feel about it?
15     MR. SCHRAGER: Feel about what at what point?
16     BY MR. JOHNS:
17     Q   I'm sorry. The car behind you seeing that it wasn't
18  slowing down, how did it make you feel when you saw that?
19     A   When I was stopped I saw a vehicle behind me still
20  moving. I was concerned that I might be hit.
21     Q   What went through your mind, if you recall, of any
22  actions that you might be able to take or anything that you
23  could do? I mean, what was your thought process, if you can
24  take me through that?
25     MR. SCHRAGER: Objection to his state of mind. But,

Page 12

1  go ahead, you can answer the question if you can.
2      THE WITNESS: From the time I was hit -- from the
3  time I stopped until the time I was hit was about 20 to 30
4  seconds. The car stopped. I noticed in my rearview mirror
5  the car behind me had not stopped. I was nervous that I might
6  be hit and I was hoping that the car behind me would stop in
7  time.
8      BY MR. JOHNS:
9      Q   There was no place for you to go, I guess -- you
10  couldn't maneuver out of that situation, right?
11     A   Correct, I could not maneuver.
12     Q   Were there cars to your right and cars to your left?
13     A   I was in the left-hand lane, so I could not move
14  left because there would have been -- in fact, I think there's
15  even a cement barrier there.
16     Q   Was one of the actions that you took heavily putting
17  on your brakes in anticipation of getting hit from behind so
18  you wouldn't hit anything else in front of you? Is that one
19  of your impulses at the time or one of your actions?
20     A   I was already stopped, so my foot would already have
21  been on the brake.
22     Q   Did you press it harder or anything like that? Did
23  you lean into the brake knowing you're going to get hit?
24     A   I don't recall.
25     Q   How many seconds, if you could estimate, from the

Page 13

1  point that you started realizing that you might get hit, was
2  that one second or was it maybe three or four seconds? How
3  long a period of time was that when you initially observed the
4  car and you came to the realization that it wasn't going to
5  stop from the point that you realized that to the point that
6  you got hit. Can you give me an idea of period of seconds?
7      MS. JACKMAN: Objection.
8      MR. SCHRAGER: If it's that long.
9      MR. JOHNS: If it's that long, right.
10     MR. SCHRAGER: You may answer the question.
11     THE WITNESS: I don't recall. A few seconds.
12     BY MR. JOHNS:
13     Q   But, it was more than one second perhaps?
14     A   Maybe five seconds.
15     Q   It could have been that long. That's okay. Can you
16  describe right when you got hit what did your car do? What
17  did you observe your car doing right when you got hit?
18     A   I know that we moved because we were pushed from
19  behind. And, then my concern was for the safety of my mother.
20     Q   Did your car come into contact with the vehicle in
21  front of you?
22     A   I don't recall that.
23     Q   You testified that you got out to see if people were
24  okay. Was that in the car in front of you or the car behind
25  you?

4 (Pages 10 to 13)

# Exhibit D

1 (Pages 1 to 4)

---

**Page 1**

1    IN THE UNITED STATES DISTRICT COURT
2        FOR THE DISTRICT OF COLUMBIA
3    - - - - - - - - - - - - - -x
4    MICHAEL A. CORNWELL,          :
                                    :
5        Plaintiff.    :
                       : Case No.:
6        vs.    : 1:05-cv-02258-HHK
                                    :
7    USMAN BANDUKRA, et al..    :
                                    :
8        Defendants.    :
                                    :
9
    - - - - - - - - - - - - - -x
10
11
12
13        Deposition of ROBERT M. CORNWELL
14            Washington, D.C.
15        Tuesday, November 7, 2006
16            2:30 p.m.
17
18
19
20    Job No. 1-90291
21    Pages 1 - 77
22    Reported by:  Paula J. Eastes

---

**Page 2**

1        Deposition of ROBERT M. CORNWELL, held at
2    the offices of:
3
4    WHITEFORD, TAYLOR & PRESTON, L.L.P.
5    1025 Connecticut Avenue, N.W.
6    Suite 400
7    Washington, D.C. 20036
8    (202) 659-6791
9
10
11
12
13
14
15
16
17
18        Pursuant to agreement, before Paula J.
19    Eastes, Court Reporter and Notary Public in and for
20    the District of Columbia.
21
22

---

**Page 3**

1        A P P E A R A N C E S
2
3    ON BEHALF OF THE PLAINTIFF:
4
5    CHRISTOPHER M. JOHNS, ESQUIRE
6    Law Office of Christopher Johns
7    18961 Highstream Drive
8    Germantown, Maryland 20874
9    (301) 674-6900
10
11    ON BEHALF OF THE DEFENDANTS SABIHA BANDUKRA AND
12        USMAN BANDUKRA:
13
14    JENNIFER S. JACKMAN, ESQUIRE
15    Whiteford. Taylor & Preston
16    1025 Connecticut Avenue, N.W.
17    Suite 400
18    Washington, D.C. 20036
19    (202) 659-6800
20
21
22

---

**Page 4**

1        A P P E A R A N C E S
2
3    ON BEHALF OF THE DEFENDANT MICHAEL GALLAGHER
4
5    RICHARD S. SCHRAGER, ESQUIRE
6    Law Offices of Mallon A. Snyder Chartered
7    107 North Adams Street
8    Rockville, Maryland 20850
9    (301) 762-7500
10
11
12
13
14
15
16
17
18
19
20
21
22

---

57

1　the damage to his vehicle?
2　　　　MR. JOHNS: Objection. Hearsay.
3　　　　You can answer.
4　　　　THE WITNESS: No.
5　　　　MS. JACKMAN: I don't need to get into
6　anything regarding the relationship with Mr. and Mrs.
7　Bandukra because you have already agreed to dismiss
8　Mr. Bandukra; is that correct?
9　　　　MR. JOHNS: Yes.
10　　　　Let me clarify that we brought Mr. Bandukra
11　in on the allegation that his wife was acting as an
12　agent for him while she was in D.C. I don't think
13　there is any proof to that. That is the only reason
14　he isn't in.
15　BY MS. JACKMAN:
16　　Q　When do you plan on returning to Illinois?
17　　A　I will probably leave like today.
18　　　　MS. JACKMAN: I don't have any other
19　questions.
20　　　　MR. JOHNS: I just have a couple of
21　questions.
22　　　　MS. JACKMAN: It goes to Mr. Schrager I

58

1　believe.
2　　　　MR. SCHRAGER: It is my turn first.
3　　　　MR. JOHNS: After you.
4　　　　EXAMINATION BY COUNSEL FOR DEFENDANT
5　　　　　　MICHAEL GALLAGHER
6　BY MR. SCHRAGER:
7　　Q　Mr. Cornwell, just to go over this just
8　because you may have been mistaken about the date of
9　the accident.
10　　　　We have the date of the accident as being
11　August 30, 2002 and originally you testified you
12　learned that your dad had been involved in an accident
13　in late 2003 or 2004?
14　　A　Right.
15　　Q　Is that still correct?
16　　A　Yes. I believe so.
17　　Q　So, it would have been over a year after
18　the accident; is that right?
19　　A　Yes.
20　　Q　And how did it come up?
21　　A　My mom and aunt hadn't talked in a while
22　and my aunt called her one day and they started

59

1　talking.
2　　Q　So, you did not learn of it from your
3　father originally?
4　　A　No.
5　　Q　Do you know why your father was in the
6　Washington, D.C. area at the time?
7　　A　No.
8　　Q　Did your father tell you anything about how
9　the accident happened?
10　　A　He told me he was at a stoplight and they
11　were the front car and a car hit the car behind him
12　and it hit them.
13　　Q　Did you discuss anything at all with your
14　father concerning what his medical treatment was
15　following the accident?
16　　A　I know he -- did I discuss it?
17　　Q　Yes.
18　　A　Or do I know it?
19　　Q　No.
20　　　　Did you discuss with your father what his
21　medical treatment had been after the accident?
22　　A　Just he told me that he had the surgery on

60

1　his neck.
2　　Q　Prior to this accident were you aware that
3　your father had ever injured his neck or his back
4　before?
5　　A　No.
6　　Q　You were not aware or he had not?
7　　A　I am not aware.
8　　Q　Have you discussed your appointment as a
9　personal representative in this case with your
10　brother?
11　　A　My brother?
12　　Q　No. I'm sorry. With your mother.
13　　A　Yes. I talked to her about it one time.
14　　Q　Do you have any other siblings of your
15　father and your mother?
16　　A　No.
17　　Q　Before February of 2005, why hadn't you
18　seen your father since 1998?
19　　A　My mom had tried to keep us away from each
20　other.
21　　Q　If you know, was that more of her own
22　preference or was it something that had happened

# Exhibit E

#5569

## TRAFFIC ACCIDENT REPORT

Metropolitan Police Department, Washington, D.C.

PD 10 Rev. 7/85   Prescribing Directive G.O 401.5

DATE: 8-30-02   TIME: 1315   DAY: FRIDAY   4-20-02

FIRST & NEW YORK AVENUE NW
AT INTERSECTION
32D   3   3

Vehicle 1   1 2 2 3 4

13040   10:12:59

**STRIKING OBJECT**

1. Driver: BANDUKRA, SABHA U
24 MAGGIE STREET OCEANSIDE NY
916 766 0460   972 039 016   NY   NONE
D-1
10-29-51

**OWNER**

2. Driver: GALLAGHER, MATTHEW JOHN
11019 SOMERSET COURT GREENBELT MD
G-496-599-499-1181/MD/B/2200 DMO
CRV ON 4X4   KW520/MD/M
D-2
4-6-58

**OWNER**
LATIMORE, RON
1055 CENTER ST FRANKLIN VA 22801
UNK   TG4104367 / VA
D-1

CANWELL II, JOHN R.
100 FORESTPINE RD #D

**PERSONS INVOLVED**

| | AGE | SEX | | | | |
|---|---|---|---|---|---|---|
| D-1 | GALLAGHER, KATHELINE / 3004 SW 4TH PLACE | 44 | F | 1 | 01 04 04 04 01 |
| D-2 | BARDAWIN, JAMES / 561 S MAIN ST | 44 | M | 2 | 01 04 03 04 01 |
| D-3 | CANWELL, MICHAEL / 105 D FORESTPINE RD | 45 | M | 3 | 04 03 03 01 01 |



Complaint No. 130-409

What Traffic Signs Present? LIGHT

Charge (Report must support the charge.) COLLIDING

44. NARRATIVE - Give a concise statement, in your own words, of the facts that are covered in this report, or to clarify any that are not satisfactorily explained. Use Continuation Sheet (if more is needed). If intersection is taken, use PD 118 (Def./Suspect Statement), or PD 119 (Compl./Witness Statement). If accidents occurred in a construction zone, describe type of construction.

VEHICLE #1 WHICH WAS TRAVELING WESTBOUND ON NEW YORK AVENUE NW STRUCK VEHICLE #2 WHICH WAS AT A STANDSTILL FACING WESTBOUND ON NEW YORK AVENUE NW CAUSING HIM TO STRIKE VEHICLE #3 WHICH WAS ALSO AT A STANDSTILL FACING WESTBOUND ON NEW YORK AVENUE NW VEHICLE #'S 2 AND 3 WERE STOPPED AT A RED SIGNAL LIGHT. THERE IS NO DAMAGE TO VEHICLE #3. OR THE FRONT OF VEHICLE #2. ALSO THERE IS NO DAMAGE TO VEHICLE #1.

BADGE NO. 1965  UNIT 1D

CONTINUATION SHEET (List item number of section continued with required information.)

| Item No. | | | | | | | | | | | | | | | | | | Complaint No. |
|------|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|------|
| | | | | | | | | | | | | | | | | | | |

# Exhibit F

**Page 1**

```
1      IN THE UNITED STATES DISTRICT COURT
2         FOR THE DISTRICT OF COLUMBIA
3   - - - - - - - - - - - - - -x
                                :
4   MICHAEL A. CORNWELL,        :
                                :
5         Plaintiff,  :
                      : Case No.:
6         vs.         : 1:05-cv-02258-HHK
                      :
7   USMAN BANDUKRA, et al.,     :
                                :
8         Defendants.   :
                                :
9   - - - - - - - - - - - - - -x
10
11
12
13         Deposition of SABIHA BANDUKRA
14              Washington, D.C.
15         Tuesday, November 7, 2006
16              10:40 a.m.
17
18
19
20  Job No. 1-90431
21  Pages 1 - 81
22  Reported by:  Paula J. Eastes
```

**Page 2**

```
1
2      Deposition of SABIHA BANDUKRA, held at
3   the offices of:
4
5      WHITEFORD, TAYLOR & PRESTON, L.L.P.
6      1025 Connecticut Avenue, N.W.
7      Suite 400
8      Washington, D.C. 20036
9      (202) 659-6791
10
11
12
13
14
15
16
17
18
19      Pursuant to agreement, before Paula J.
20   Eastes, Court Reporter and Notary Public in and for
21   the District of Columbia.
22
```

**Page 3**

```
1              A P P E A R A N C E S
2
3   ON BEHALF OF THE PLAINTIFF:
4
5      CHRISTOPHER M. JOHNS, ESQUIRE
6      Law Office of Christopher Johns
7      18961 Highstream Drive
8      Germantown, Maryland 20874
9      (301) 674-6900
10
11  ON BEHALF OF THE DEFENDANTS SABIHA BANDUKRA AND
12      USMAN BANDUKRA:
13
14      JENNIFER S. JACKMAN, ESQUIRE
15      Whiteford, Taylor & Preston
16      1025 Connecticut Avenue, N.W.
17      Suite 400
18      Washington, D.C. 20036
19      (202) 659-6800
20
21
22
```

**Page 4**

```
1              A P P E A R A N C E S
2
3   ON BEHALF OF THE DEFENDANT MICHAEL GALLAGHER:
4
5      RICHARD S. SCHRAGER, ESQUIRE
6      Law Offices of Mallon A. Snyder Chartered
7      107 North Adams Street
8      Rockville, Maryland 20850
9      (301) 762-7500
10
11  ALSO PRESENT:
12
13      USMAN BANDUKRA
14
15
16
17
18
19
20
21
22
```

---

13

BY MR. JOHNS:

1  Q  Yes.
2      What I mean to say is when you hit, I mean
3  the car that you were driving at the time of this
4  accident hit Mr. Gallagher's car in this accident.
5      Is that yes or no?
6  A  Yes.
7  Q  And you unfortunately hit Mr. Gallagher's
8  car because you were distracted perhaps?
9  A  No.
10  Q  You hit Mr. Gallagher's car because you
11  were not paying attention perhaps?
12  A  No.
13  Q  You hit Mr. Gallagher's car because you
14  were not looking where you were going perhaps?
15  A  No.
16  Q  You hit Mr. Gallagher's car because you
17  were speeding faster than maybe you should have been?
18  A  No.
19  Q  You hit Mr. Gallagher's car because you
20  were not able to push the brake pedal on time?
21  A  Can I answer in a sentence?

---

14

1  Q  Yes.
2      MS. JACKMAN: You don't have to answer yes
3  or no, just to be clear. He is asking you to answer
4  yes or no, but if you don't want to answer yes or no,
5  you can answer however you want to answer.
6      BY MR. JOHNS:
7  Q  Right.
8      What was your explanation on my last
9  question, which was you hit Mr. Gallagher's car
10  because you were not able to push the brake pedal on
11  time?
12  A  I was proceeding, probably it was maybe
13  20 miles per hour, and all of a sudden I saw the car
14  in front of me stop and at the same time I hit the
15  brake. But it barely tapped the car in front of me.
16  It wasn't a hit. It was --
17  Q  I understand.
18      MS. JACKMAN: Let her finish. Let her
19  finish her answer.
20  BY MR. JOHNS:
21  Q  I'm sorry.
22  A  I did hit the brake, but it was a sudden

---

15

1  stop and that is how I just hit the car in front of
2  me.
3  Q  Was there a light at the time, a red light,
4  at the intersection when you did that?
5  A  By the time, yes, I looked at it, it
6  probably turned red.
7  Q  So, when you characterize it as a sudden
8  stop, were the vehicles stopping for the light?
9  A  I just saw that it made a sudden stop and
10  that is how I stopped.
11  Q  I understand.
12      Were you looking at the light at the time
13  to know what the light was doing? Was it changing to
14  red or were you looking at the light at the time?
15  A  No. According to me, it was green.
16      I don't know why they made a sudden stop.
17  Q  Did Mr. Gallagher's brake lights work?
18      MS. JACKMAN: Objection.
19      THE WITNESS: What do you mean?
20      MS. JACKMAN: Objection. Calls for
21  speculation.
22      BY MR. JOHNS:

---

16

1  Q  She can object for the record and unless it
2  is a privilege question, you can answer.
3      MS. JACKMAN: She knows. She knows to
4  answer unless I tell her not to.
5      BY MR. JOHNS:
6  Q  Do you know if Mr. Gallagher's brake lights
7  worked at the time?
8      MS. JACKMAN: Objection. Speculation.
9      THE WITNESS: I wouldn't know that.
10  BY MR. JOHNS:
11  Q  Did you observe Mr. Gallagher's brake
12  lights working at the time when he stopped?
13  A  Yes.
14  Q  We are going to get into more on the
15  characterization of a light hit in this deposition.
16  So, I can show you some things on that throughout the
17  deposition.
18      So, when you hit Mr. Gallagher's car I
19  think you said that you were unable to hit the brake
20  on time.
21      Is that fair?
22  A  No. I did hit the brake, but it was a

---

```
                                                          73
1    A   Correct.
2    Q   For approximately how long had you been in
3  the left lane before the accident happened either in
4  time or in distance or in any measurement that you are
5  comfortable with?
6    A   Maybe seven or eight minutes.
7    Q   So, you had not just switched into the left
8  lane?
9    A   No.
10   Q   Prior to the accident, had you ever
11 actually noticed Mr. Gallagher's vehicle in front of
12 you?
13   A   Yes.
14   Q   How long before the accident?
15   A   I wouldn't know that.
16   Q   Approximately if you can.
17   A   I really wouldn't know that. I know that
18 some car was there in front of me, but not to be
19 precise.
20   Q   Is it your contention that Mr. Gallagher
21 changed lanes in front of you?
22   A   No.
```

```
                                                          74
1    Q   So, he was in the lane ahead of you and in
2  that lane before the accident happened; is that right?
3    A   Right.
4    Q   As you are approaching the intersection
5  with First Street, how far away were you from the
6  intersection when you first noticed the color of the
7  traffic light facing you?
8    A   The distance?
9    Q   Yes.
10       For example, a full block away, less than a
11 block away?
12       MR. JOHNS: Objection to the question. She
13 didn't testify to that yet.
14       THE WITNESS: Less than a block.
15 BY MR. SCHRAGER:
16   Q   When you first noticed the color of the
17 traffic light that was facing you at the intersection
18 what color was it?
19   A   Green.
20   Q   Did you ever see Mr. Cornwell's vehicle
21 before the accident?
22   A   Yes. There was some car in front of me.
```

```
                                                          75
1  It was probably his car.
2    Q   Hold on just to make sure.
3        You said in front of you. Mr. Gallagher's
4  car was directly in front of you, correct?
5    A   Right. Correct.
6    Q   My question to you was before the accident
7  did you ever actually see Mr. Cornwell's car?
8    A   No.
9    Q   When you first noticed Mr. Gallagher's
10 vehicle, was it moving or was it stopped?
11   A   It was moving and then stopped.
12   Q   And when it stopped was it in front of you?
13   A   Yes.
14   Q   Did you see the brake lights come on in
15 Mr. Gallagher's car?
16   A   I don't remember that.
17   Q   At the time that you saw him stop, how fast
18 were you traveling?
19   A   I guess 20 miles per hour.
20   Q   You said I guess. I just want to make
21 sure. We don't like that word in a deposition.
22       Is that your best estimate?
```

```
                                                          76
1    A   Best estimate is 20.
2    Q   When you were traveling at 20 miles per
3  hour just before Mr. Gallagher stopped, what distance
4  separated the front of your vehicle from the rear of
5  his vehicle?
6    A   Say that again.
7    Q   At a point before the accident you saw
8  Mr. Gallagher come to a stop, correct?
9    A   Yes.
10   Q   And you testified I believe at that point
11 just before that you were traveling approximately
12 20 miles per hour, correct?
13   A   Correct.
14   Q   At that time what distance separated the
15 front of your car from the rear of his car?
16       MS. JACKMAN: You can do it by feet or car
17 lengths.
18 BY MR. SCHRAGER:
19   Q   Can you estimate in feet or car lengths or
20 blocks? Anything that you are comfortable with.
21   A   Maybe eight to ten feet.
22   Q   And would you say that eight to ten feet is
```

77

1 less than a car length?
2    A   Yes.
3    Q   Did you skid?
4    A   I think so.
5    Q   You don't know?
6    A   I am not sure. I did hit the brake, but it
7 still just tapped Mr. Gallagher's car.
8    Q   When you hit Mr. Gallagher's car was it
9 moving or was it stopped?
10    A   Everything happened so sudden. It is hard
11 to tell. But according to me, I was going nice and
12 slow because everybody was at a slow speed. It was a
13 busy day, a Friday afternoon. The road was busy.
14 Everybody was going nice and slow. Then just the car
15 in front of me stopped short and I hit the brake and
16 it was just like a slight tap on the car in front of
17 me. It wasn't like a big impact. It wasn't like
18 that.
19    Q   You spoke with Mr. Gallagher after the
20 accident, correct?
21    A   Correct.
22    Q   Did you ask him why he stopped short, why

78

1 he stopped suddenly?
2    A   No. I didn't ask him.
3    Q   Did Mr. Gallagher say anything about how
4 the accident happened?
5    A   No.
6    MR. SCHRAGER:  That is all I have.
7    Thank you very much.
8    MR. JOHNS:  I have no more questions.
9    MS. JACKMAN:  I don't have any questions.
10    MR. JOHNS:  I am going to go ahead and make
11 copies. I am going to leave the deposition open so I
12 can go make copies of these pictures.
13    It is 12:15. I suggest we break for lunch
14 so I can do that.
15    MR. SCHRAGER:  Well, you had your chance.
16 The deposition is over.
17    MS. JACKMAN:  You already said you had no
18 more questions.
19    MR. SCHRAGER:  The deposition is over.
20    (Signature having not been waived, the
21 deposition of SABIHA BANDUKRA was concluded at
22 12:00 p.m.)

79

1            *    *    *
2       ACKNOWLEDGMENT OF DEPONENT
3       I, SABIHA BANDUKRA, do hereby acknowledge that
4 I have read and examined the foregoing testimony, and
5 the same is a true, correct, and complete
6 transcription of the testimony given by me, and any
7 corrections appear on the attached Errata Sheet signed
8 by me.
9
10
11    (DATE)            (SIGNATURE)
12
13
14
15
16
17
18
19
20
21
22

80

1 CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC
2       I, Paula J. Eastes, Registered
3 Professional Reporter, the officer before whom the
4 foregoing proceedings were taken, do hereby certify
5 that the foregoing transcript is a true and correct
6 record of the proceedings; that said proceedings were
7 taken by me stenographically and thereafter reduced to
8 typewriting under my supervision; and that I am
9 neither counsel for, related to, nor employed by any
10 of the parties to this case and have no interest,
11 financial or otherwise, in its outcome.
12    IN WITNESS WHEREOF, I have hereunto set my
13 hand and affixed my notarial seal this  day of
14 2006.
15
16 My commission expires:  February 14, 2011
17
18
19
20 NOTARY PUBLIC IN AND FOR THE
21 DISTRICT OF COLUMBIA
22